## JAMES F. MORRISON and CHAS. M. ARMSTRONG *vs.* CHRISTIAN BAECHTOLD and STEPHEN PARKER, Etc.

*Personal Liability of Officer of Corporation Contracting for it in His Own Name—Parol Evidence to Show True Nature of the Transaction—Entire and Divisible Contracts.*

The property of the U. S. Electric Light Co. was sold by receivers to one of the defendants in this case, who represented the Northern Elec. Co. to which the property was subsequently transferred. One of the defendants was the president and the other the treasurer of the Northern Co. Before the transfer was made, the plaintiffs, by letter addressed to a defendant as agent of the U. S. Co., offered to supply new electrical apparatus and the formal proposal relating thereto was addressed to the U. S. Elec. Co. The defendants accepted this proposal, subject to a modification as to terms, but not as to parties, by a letter signed by them individually, and the contract was concluded by a letter from plaintiffs to defendants agreeing to the modification. The plaintiffs knew that the defendants were acting on behalf of the Northern Co.; subsequent letters by them to the plaintiffs were in the name of that company; plaintiffs complied with instructions therein contained, and accepted checks of that company in part payment. The contract required the delivering of some of the property of the U. S. Co. in part payment for the articles supplied by the plaintiffs. In an action in the contract against the defendants individually. *Held.*

1st. That although the final acceptance of plaintiffs' offer was signed by the defendants individually without naming any corporation, yet the offer was not made to them but to a corporation, and this creates an ambiguity as to the capacity in which the defendants acted.

2nd. That where there is an ambiguity on the face of the papers as to whether parties to a written contract intended to bind themselves personally or were acting in their official capacity for a corporation, then parol evidence is admissible to prove the true nature of the transaction.

3rd. That the parol evidence in this case shows that the plaintiffs knew that the defendants were acting on behalf of the Northern Company, and that it was the intention of both parties that defendants should contract as agents for that company, and that consequently defendants are not personally liable on the contract.

An electric light company, which had purchased the property of a former company, desiring to obtain a new outfit, contracted to buy an apparatus for the business consisting of ten dynamos and four hundred

lamps; and the seller agreed to take in part payment the whole of the old apparatus. Separate prices were named for the dynamos and for the lamps, but the purchase-money was to be paid as a whole as follows: a certain sum in cash thirty days after the first shipment by the sellers; one half of the balance by note of three months from the last shipment, and the remainder by note at six months from the last shipment. *Held*, that the contract was entire, and not divisible into two separate contracts, one for dynamos and the other for lamps.

Appeal from the Court of Common Pleas (DENNIS, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Charles Marshall* and *Richard M. Venable* (with whom were *R. E. Lee Marshall* and *C. M. Armstrong* on the brief), for the appellants.

*Abraham S. Gilbert* (with whom were *Hugo Steiner* and *Lewis Putzel* on the brief), for the appellees.

PEARCE, J., delivered the opinion of the Court.

This is an action of *assumpsit* brought by the appellees against the appellants. The declaration contains three counts, the first being for goods sold and delivered, and the second for work done and materials provided. The third is a special count, alleging, 1st, that in pursuance of an agreement in writing, plaintiffs sold and delivered to defendants ten dyanmos of designated power, in consideration of which defendants agreed to pay plaintiffs $5,250, and also to deliver to plaintiffs twenty-four second-hand dynamos described in said agreement; 2nd, that plaintiffs also sold and delivered to defendants one hundred and eighty arc lamps of designated power, the reasonable value and agreed price of which, after allowing the reasonable value of certain second-hand lamps delivered by defendants to plaintiffs as part payment therefor, was $1,890; and 3rd, that the reasonable value and agreed price of said dynamos and lamps, after allowing the value of the second-hand dynamos and lamps delivered by defendants to plaintiffs, was $7,230, and that only $1,000 had been paid on account in money, leaving due a balance of $6,230.

The defendants pleaded to the first and second counts, never indebted as alleged, and to all the counts, never promised as alleged, and the case was tried before the Court, without a jury, resulting in a verdict for the plaintiffs and judgment thereon for $5,895.

At the close of all the testimony, the plaintiffs submitted nine motions to strike out testimony, of which two were granted and seven were refused, and the plaintiffs also offered twenty-seven prayers, of which sixteen were granted and eleven were refused. The defendants submitted thirteen motions to strike out testimony, of which three were granted and ten were refused, and also offered six prayers all of which were refused. A single exception was taken by the defendants to the action of the Court in granting the plaintiffs motions and prayers, and in refusing the prayers and motions of the defendants.

There are two principal questions in the case, viz:

1st. Is the contract entire and indivisible, or is it separate and apportionable?

2nd. Are the defendants in either event personally liable on the contract?

In granting the plaintiffs first prayer the Court held that the contract was not entire, but that there were two separate contracts, one for dynamos, and one for lamps.

And in granting the plaintiffs second prayer the Court held that the contracts sued on were the individual obligations of the defendants.

The defendants fourth prayer, which was refused, asked the Court, if it found that at the time of making the contract the plaintiffs knew the defendants were not acting in making it in their individual capacity, but as agents of the Northern Electric Company, to rule that the defendants were not personally bound by the contract, and that the plaintiffs could not recover either upon the special count or the common counts. The consideration of these prayers will require somewhat full reference to the testimony upon which they are based.

The proposition of plaintiffs was made September 7th, 1897,

and the contract was concluded September 24th, 1897. The United States Electric Light and Power Company had been in the hands of receivers, and its property and assets were sold in July, 1897, by the receivers to one Hanes, a broker, who represented James F. Morrison, who in turn represented the Northern Electric Company. Charles M. Armstrong, as one of the receivers of the U. S. Electric Light and Power Co., had been operating it for nearly a year. The sale was ratified August 10th, and on the same day the receivers conveyed the property to Hanes, and on the same day also Hanes conveyed it to Edward Stabler, Jr., as security for a loan procured through him from a guaranty company to complete the payment of the purchase-money. On October 1st, 1897, Stabler conveyed the property to Morrison, and on the same day Morrison conveyed it to the Northern Electric Co.

The equipment of the U. S. Electric Light and Power Co. was out of date, both machines and lamps being old style. The testimony, all of which was admitted subject to exception, showed that defendants told Bonney, the plaintiffs agent (through whom the proposition of September 7th was submitted), at the works of the U. S. Electric Light and Power Co. about August 26th, 1897, that *the company* must be equipped with new apparatus in time to take on the increased business of the fall, and that Bonney said the plaintiffs "could deliver *the whole outfit* within thirty days after receipt of order." The minutes of the Northern Electric Co. show that on September 24th, 1897, the same day this contract was made, Morrison was elected General Manager and Armstrong, Secretary and Treasurer of the Company and that these officers were authorized to contract jointly in behalf of the company for construction equipment. and supplies. The negotiations had been opened by a letter from Bonney as agent of plaintiffs August 23rd, 1897, to "C. M. Armstrong, agent of U. S. Electric Light and Power Co.," stating that they had learned of the change of ownership of the plant, and offering to submit estimates for a new apparatus. This letter was followed by a number of letters and telegrams, all addressed in the same

way, and on September 2nd, Armstrong wrote suggesting that he send prices and adding, "if you prefer to see *our people* in person, and should desire to come on, wire day and hour you will arrive." Bonney accordingly came to Baltimore and was told by Morrison they wanted "a complete harmonious apparatus"; an electric lighting plant to consisit of ten dynamos and four hundred lamps"; and they discussed together "the Fort Wayne apparatus as a standard." This is not contradicted by Bonney. Morrison also testifies that he told Bonney all about the Northern Electric Co. and that he had secured its charter to operate under, but this is denied by Bonney. On October 3rd, two days after the conveyance o the property to the Northern Electric Co., Morrison wrote the plaintiffs in reference to sketch of lamps submitted, and signed his letter "The Northern Electric Co., by James F. Morrison, General Manager," and from that date all of defendants letters were in the name of that company either by Morrison, General Manager, or by Armstrong, Secretary and Treasurer. The plaintiffs acknowleged all these letters, complied with instructions given therein by the company; sometimes parried and excused delays in shipments, and sometimes confessed the justice of complaints made by the company but never disputed or even questioned the right of the company to speak and act, as it always did speak and act, as the real party to the contract. The contract itself provided that all the old apparatus taken in part payment should be delivered to the plaintiffs at the works of the U. S. Electric Light and Power Co. and they were so delivered; the works and old apparatus being then as plaintiffs knew, the property of the Northern Electric Co.; and the payment of one thousand dollars which was made on account was by check of the Northern Electric Co.

Now upon the face of the papers constituting the contract, and the testimony summarized above, was the contract entire or separable, and were the defendants personally liable on the contract?

The definition of the word *apparatus* given in Webster's

Dictionary is, "a full collection or set of implements for a given duty, experimental or operative" and this definition is implied in the derivation of the word. These implements or agencies may be numerous and various in character, but are all united in a common function. The contract recognizes the use of the word *apparatus* in the sense above indicated, by the guarantee "that the dynamos they propose furnishing, will operate the number of lamps as above specified, at the regular speed, horse power, and amperage stamped upon the dynamos." This requires a mutual correspondence and adaptability between the dynamos and the lamps, and indissolubly connects them as parts of a whole. The contract consists of three papers: 1st. Plaintiffs' proposition of September 7th; 2nd. Defendants' letter of September 24th, proposing a modification of the proposition as the basis of acceptance, and 3rd, plaintiffs' reply accepting the modification and closing the negotiation upon that basis. It was entirely proper and natural that plaintiffs should, in their proposition, state separately the price of dynamos and lamps in order that defendants might better judge of the fairness and reasonableness of the aggregate price of the apparatus, but it would be unreasonable, merely because separate prices were thus named, to stamp the contract as separable, and the Court properly admitted parol testimony in order to place the Court, in determining this question, in the position of the parties to the contract. This testimony shows that the plaintiffs examined the plant of the U. S. Electric Light and Power Co. at their works, and the lamps then in use in their business, and, after examining it, agreed to furnish an apparatus for that business, to consist of ten dynamos and four hundred lamps, and to take in part payment the whole of the old apparatus. They bought a second-hand plant, and they sold a new plant to replace the old. We think the intention of the parties is apparent that the new dynamos and the new lamps should constitute a *res integra*. That this should be determined, not alone from the language of the instrument constituting the contract, but from the facts and circumstances attending its making, is not only consonant with good sense,

but is in accord with the rule of evidence stated by text writers and approved in our own decisions. "Whether a contract is entire or separable, like most other questions of construction, depends upon the intention of the parties, and this must be discovered in each case by considering the language employed and the subject-matter of the contract." 2nd *Parsons on Contracts,* 697; *Brantly's Law of Contract,* 216. "Parol evidence may be admitted to ascertain and make certain the *parties* and *subject-matter* of an agreement, to apply the contract to its subject, and to remove latent ambiguities. In such case it is not used to contradict or vary the written instrument, but to aid, uphold and enforce it as it stands." *Rice* v. *Forsyth,* 41 Md. 402. An instructive application of the above rule in an analogous case is found in *Dugan* v. *Anderson,* 36 Md. 585. Dugan had contracted with Anderson to employ him as clerk at a certain salary until March, 1871, and then to receive him as a partner in business for one year certain, on a one-third interest. Anderson entered on the service as clerk, but was discharged before March, 1871, though he offered himself ready to continue as clerk till the time appointed and then to become a partner. In a suit by him for breach of contract, he was allowed to recover for breach of the whole agreement, though his suit was brought before March, 1871. In the course of the opinion, JUDGE MILLER said: "In determining this question, Courts must be guided by a respect to general convenience, and by the good sense and reasonableness of the particular case. Where an agreement embraces a number of distinct subjects which admit of being separately executed and closed, the general rule is that it shall be taken distributively, and each subject be considered as forming the matter of a separate agreement after it is so closed. In one sense the contract before us is in its nature and terms separable and apportionable; that is, its separate parts, the services as clerk and the partnership, were capable of separate execution, and must have been performed consecutively in order of time. But in respect to the intention of the parties as gathered from the facts presented by the plaintiffs' prayer, it was in our opinion to be entire and indivisible."

See also, *Broumel* v. *Rayner*, 68 Md. 47, and *Olmstead* v. *Bach & Myers*, 78 Md. 144.

The view which we have expressed of the case in hand is confirmed by the character of the modification proposed in defendant's letter of September 24th.   In the plaintiff's proposition, the price of dynamos and lamps was separated, and bills were to be rendered *"for apparatus as shipped;"* one-half the amount of *each bill* to be paid net cash 30 days, and the remaining one-half net cash 60 days.   But the modification proposed by defendants and accepted by plaintiffs, consolidated the indebtedness for dynamos and lamps and stipulated for payment as follows: One thousand dollars to be paid in cash thirty days after *first* shipment; one-half of balance by note at three months from *last* shipment, and remaining one-half of balance by note at six months from *last* shipment.   Whatever might have been the construction, in this regard, of the original proposition if it had remained unaltered, we think the defendants in the modification they proposed, clearly indicated their understanding of the character of the contract into which they proposed to enter ; and that by acceptance of that modification, the plaintiffs must be taken to have assented thereto, whatever may have been their understanding of their original proposition.

In any view of the case, we think the contract was entire, and it follows from what we have said that the plaintiffs' first prayer was improperly granted.

We come now to the question whether the defendants are in any event personally liable on the contract.

Sir William R. Anson says, "every contract springs from the acceptance of an offer." *Anson's Law of Contract*, p. 13; and, "an offer is not made until it is communicated to the offeree," *idem*, p. 19.   Of the latter statement he observes, that "this rule is not the truism that it appears ;" one of the reasons for which, obviously is, that no one but the offeree can accept the offer, unless the offeror consents to the substitution of another party, although when it is clear that such a substitution is proposed and assented to, the substituted party is bound by acceptance of the offer.

The paper of September 7th, is on its face a proposal to the *United States Electric Light and Power Company.* It was that proposition which was accepted by the letter of Morrison and Armstrong of September 24th, provided it was modified as proposed by them, and it was the same proposition which was modified by the plaintiffs—and declared by them to be a completed contract in their reply of September 24th. Morrison and Armstrong proposed a modification of the *terms* of the contract, but none as to the *parties.* If they had designed to take for themselves the benefits, and to assume personally the liabilities, of the proposed contract, it is reasonable to presume they would have so stated, and if plaintiffs had understood them to intend not only the modification of terms which was plainly stated—but a substitution of parties, which was neither stated nor suggested, it is reasonable to suppose that plaintiffs in their acceptance, would have stated their understanding and in some manner have expressed their assent to such substitution.

The terms of the contract *as concluded*, required defendants to deliver to plaintiffs the old plant of the United States Electric Light and Power Company in payment of the amount to become due plaintiffs under the contract. The defendants could not effectively contract to deliver in payment of their individual obligation, property belonging to another, but if authorized to contract as agents for another they could legally and effectively bind that other to deliver such property, and in this view that feature of the contract is pregnant with meaning as to the character in which both parties understood the defendants were to be bound, and may almost be said to raise a presumption which the plaintiffs should be required to rebut by proof to the contrary. But without going to this extent, it may be safely affirmed that enough appears upon the face of these three papers constituting the contract, to bring this case within the principle laid down in many cases, that where there is on the face of the contract ambiguity as to the character in which a party contracts, the door is open to parol testimony, which in such case cannot be said to vary the contract.

Whether an officer of a corporation signing an agreement means to bind himself personally, must as a general rule be determined by the face of the paper itself; "but where there is such ambiguity on the face of the paper as to be consistent with either construction, whether one means to bind himself personally, or acts only in an official capacity, parol evidence is clearly admissible to prove the circumstances under which the contract was made; or in other words, to prove the true nature of the transaction." *Laflin and Rand Powder Co.* v. *Sinsheimer*, 48 Md. 416; *Haile* v. *Pierce*, 32 Md. 332; *Barry* v. *Pike*, 21 La. An. 221.

When the parol testimony admitted is considered, we think it becomes quite clear the intention of both parties was that Morrison and Armstrong should be regarded as contracting in their capacity as agents of the Northern Electric Co. The contract was made, as shown by the testimony of plaintiffs agent, who acted for them, with knowledge that the plant of the U. S. Electric Light and Power Co. either had changed, or was about to change owners; and we think the weight of the evidence shows, with knowledge also that Morrison had purchased the property, assets, and name of the U. S. Electric Light and Power Co. for the benefit of the Northern Electric Co. which was to become the real owner upon the ratification of the sale; and that, pending these proceedings, Morrison and Armstrong were operating the U. S. Electric Light and Power Co. for the benefit of the Northern Electric Co. and that they were representing the latter company in the negotiations which led to this contract, as well as in its subsequent execution. It appears upon the face of the contract that the plaintiffs agreed "with the purchaser to make good at *their factory* at any time within six months from date, any defects not caused by accident, misuse, or neglect." The factory was not the property of Morrison and Armstrong, but of the corporation for whose benefit it had been purchased by Morrison at the receivers sale and of which, as we have said, we think the weight of the evidence shows that plaintiffs had knowledge. Read in the light of the parol testimony, the

face of the papers indicate that Morrison and Armstrong were acting only as officers and agents of the company by which, on that very day, they were authorized to contract for construction, equipment and supplies.

Cook in his work on *Corporations*, vol. 2, sec. 724, thus states the law applicable to such cases: "It frequently happens, however, than the person with whom the contract is made, attempts to hold liable the officer or agent of the corporation, on the ground that such officer or agent used his own name in the body of the contract, or signed it as principal instead of using the corporate name. But the Courts have quite uniformly defeated such attempts to hold the officer or agent liable. If the instrument or contract indicates that the officer or agent is acting only as agent, and if the name of the corporation appears on the instrument, the officer or agent is not liable thereon." The plaintiffs urged that this case was not within the rule thus declared, because they said, the defendants' signatures were, in their individual capacity, without any addition or qualification thereto of any kind, creating an ambiguity, and that no case had been cited where under such circumstances the Courts had permitted the person signing the contract to avoid his responsibility. But this cannot be held here without limiting the inquiry to defendants' letter of September 24th—whereas the contract here consists of the three papers before mentioned, and the proposition is made in the initial paper to the corporation named therein, and not to these defendants; so that this initial paper itself contains a qualification, which creates the ambiguity as to the capacity in which the defendants replied, and the case is thus brought directly within the principle stated by Mr. Cook.

In *Whitney* v. *Wyman*, 101 U. S. 395-6 certain persons on February 18th, ordered expensive machinery, signing the order as a committee of a corporation whose articles of association were not filed with the county clerk as was required in order to enable it to do business until February 19th. They were sued in their personal capacity. Parol testimony was admitted to show that the directors had authorized the committee to

contract in their behalf for the machinery, as was done in this case. The Court held the defendants were not personally liable, and stated the law in the following plain and instructive language:

"Where the contract is not under seal the question is always one of intent, and the Court being untrammelled by any other consideration, is bound to give it effect. As the meaning of the law makes the law, so the meaning of the contracting parties makes the agreement. Words are merely the symbols they employ to manifest their purpose, that it may be carried into execution. If the contract be unsealed, and the meaning clear, it matters not how phrased, nor how it is signed, whether by the agent for the principal, or with the name of the principal by the agent, *or otherwise.* The intent developed is alone material, and when that is ascertained, it is conclusive."

For these reasons we think the defendants were not liable personally on the contract, and the plaintiffs second and ninth motions to strike out all the testimony offered to show that the defendants acted as agents for other persons, upon the ground that it tends to vary or contradict the terms of a valid written contract, and also the plaintiffs second prayer, were improperly granted, and the defendants fourth prayer was improperly rejected.

Under the conclusions we have reached, no recovery can be had against the defendants, and it is therefore unnecessary to consider any of the other numerous motions and prayers ruled upon by the Court below.

*Judgment reversed with costs to appel-*
*lants above and below, without*
*awarding a new trial.*

(Decided April 10th, 1901.)