# ORION TAYLOR

## *vs.*

## COMMISSIONERS OF PERRYVILLE.

*Prayers: too general.    Limitations: removal of bar; authority
of individual members of municipal corporation.*

A prayer that "the Court instructs the Court sitting as a
jury that, under the pleadings and evidence in the case, the
verdict must be for the defendant," is erroneous, because too
general.                                        · p. 414

The members of a municipal corporation can not make a
valid determination binding· upon the corporation by their
assent, separately and individually expressed.          p. 416

A letter written by the Town Clerk requesting a party claim-
ing to be a creditor of the municipality to send them an. item-
ized statement of his claim, is not a recognition by the munici-
pality that anything at all was due him.          pp. 419, 421

In order to remove the bar of the statute of limitations, there
must be an admission or acknowledgment by the debtor of a
subsisting debt from which a promise to pay may be implied;
secondly, an unconditional promise to pay, or a conditional
promise and evidence showing that the condition has been
gratified.                                        p. 420

*Decided April 2nd 1918*

Appeal from the Circuit Court for Caroline County. (AD-
KINS and HOPPER, JJ.)   To which county the case had been
removed from Cecil County.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE,
JJ.

*William S. Evans* and *T. Alan Goldsborough* (with whom
was *James F. Evans* on the brief), for the appellant.

*H. A. Warburton* (with whom were *M. H. Fahey, Fred-
erick R. Owens* and *Wm. T. Warburton* on the brief), for
the appellees.

BOYD, C. J., delivered the opinion of the Court.

The record in this case does not show that there was an
entry of final judgment before the appeal was taken, but as
the Clerk of the lower Court has certified that it was merely
an oversight of his, which he has since corrected, with the
authority of the Court, by entering the judgment as of the
date the motion for the new trial was overruled, and as the
attorneys have filed in this Court an agreement that the judg-
ment so entered shall be considered as having been entered
before the appeal was taken, we will so treat it.   By that
agreement the attorneys also waived the effect of the omis-
sion to file a replication and join issue on the plea of the
statute of limitations, which the record does not show had
been done.   We will, therefore, pass on the merits of the case
regardless of those irregularities.

The prayer granted by the lower Court was unquestion-
ably too general, and therefore technically defective.   It was,

"The Court instructs the Court, sitting as a jury, that under the pleadings and evidence in the case their verdict must be for the defendant." When a case is tried before the Court, as much attention is sometimes not given to the form of a prayer as would have been if tried before a jury, especially one seeking to reach the end that this was intended to accomplish, but that sort of a prayer has been held to be bad a number of times by this Court, although we will only refer to 2 *Poe,* Sec. 297. As the real question in the case is, whether there was legally sufficient evidence to take the plaintiff's claim out of the statute of limitations, we will pass on that.

The account of the plaintiff is for the most part made up of a number of small items which cover over twenty-five pages of the printed record. The first item is, "June 4th, 1901. To bill rendered to date, $254.46." And after that there are charges running from August 20th, 1902, to July 14th, 1906, amounting in all, including the one of June 4th, 1901, to $1,801.86. There are also three items in April, 1910, amounting to $8.75. There is a credit of $150.00 on June 15th, 1905, and one of $100.00 July 5th, 1906, leaving a balance of $1,559.61, due on the last named dated, as stated in the account filed, which should have been one dollar more according to the figures given. The account is for work and labor done and materials furnished by the plaintiff to the defendant.

The plaintiff offered as evidence to remove the bar what is entitled "Financial Statement, Town of Perryville, Md.," published in a newspaper at Elkton. It is addressed "To the Taxpayers and Citizens of the Town of Perryville, Md.," signed by A. H. Owens, Secretary and Treasurer, and purports to give the receipts and payments. At the end of it there is an item as follows: "Due Orion Taylor, as near as we can find out, being unable to get bill, $1,000.00," but the statement is dated June 26th, 1908, having been published July 11th of that year, and as the suit was not instituted

until January 4th, 1915, it is clear that it can not affect the question of the removal of the bar of the statute of limitations.

When the plaintiff was on the stand he was asked as to a conversation between him and Mr. Campbell (the record says "Cameron" in some places, but "Campbell" was doubtless intended), who was one of the Commissioners of Perryville and also acted as Secretary. The testimony was admitted subject to exceptions, and was subsequently stricken out on motion. That constitutes the first exception. The ruling is objected to because the motion was too general. It ought to have stated the questions objected to more specifically, but it must have been thoroughly understood that it related to the conversation between the plaintiff and Mr. Campbell which had been admitted subject to exception. There are only three questions and answers, and, especially as the case was being tried before the Court, there would seem to have been no room for misunderstanding as to what was intended to be, and what was, stricken out. It would be a dangerous practice to permit one of three or more Commissioners, Councilmen, or whatever their official titles may be, of a municipal corporation to bind the corporation by statements he might make in reference to claims against it, unless he was duly authorized to act for the municipality. Mr. Campbell did not become one of the Commissioners until 1911, and he testified, when called by the plaintiff, that he knew nothing whatever about the account alleged by the plaintiff to be due, and he said that they never did "business singlehanded. We always had the others to do business." The members of a municipal body "can not make a valid determination binding upon the corporation by their assent separately and individually expressed." 2 *Dillon on Munc. Cor.* (5th Ed.), Sec. 501. The Court was clearly right in striking out the evidence.

The only possible ground for contending that the alleged indebtedness to the plaintiff was admitted or so acknowledged

as to revive it, is a letter which was in evidence and is as follows:

"Perryville, Md., Jan'y 13th, 1913.
"Mr. Orion Taylor, Aikin, Maryland.

"Dear Sir:

"I have been instructed by the Board of Town Commissioners as follows: 'As we have no account or record of any bill which the Town of Perryville owes Mr. O. Taylor, the secretary will on or before the 15th day of January, mail Mr. Taylor a request for to place an itemized bill of all work done and materials furnished which he claims the town owes him for; same to be in the hands of the Secretary on or before February 3rd, 1913, as any bill or claim for work done or material furnished previous to February 3rd, 1910, will not be recognized after Feby. 3rd, 1913.'

"Yours truly,
"The Commissioners of Perryville,
"George B. Campbell, Secretary."

The Commissioners were Messrs. Campbell, Rutter and Gorrell. Mr. Rutter did not testify, but Mr. Campbell did, and Mr. Gorrell testified that he did not become a Commissioner until 1912. The evidence implies that neither of the three was a Commissioner until some time after 1910. There is enough in the record to show that the appellant was claiming that the town owed him a bill, and that the three Commissioners were trying to ascertain the facts about it. They knew nothing themselves, but the plaintiff was endeavoring at the trial to prove some admissions, promises, or something that would take the claim out of the statute, and called Messrs. Campbell and Gorrell, two of the Commissioners, to the stand. All the evidence in the record was offered by the plaintiff, the prayer having been granted at the conclusion of his testimony. This appears in the testimony of Mr. Gorrell in reference to the letter above quoted: "Q. Will

you explain what you meant by this letter, or by this resolution which is contained in this letter: 'As we have no account or record of any bill which the town of Perryville owes Mr. Taylor,' etc.? As a matter of fact, you didn't have a record of a great many things, did you? A. We didn't have any record pertaining to his accounts. Q. Were your records faulty, not only as far as he was concerned, but in a great many other cases? Were the records imperfect, incomplete? A. What I mean, there was no regular meetings all along the line. Of course what records was there we couldn't dispute, what records was on the books; but there was nothing that showed any record in regard to Mr. Taylor all along the line. Q. You knew that Mr. Taylor had a bill of some kind, didn't you? A. All I knew was what he presented us. Q. Why did you write him this letter if you didn't know he had a bill? A. I can tell you how the letter came about. Q. All right; go ahead? A. Mr. Campbell was out at the station one time, and he heard Mr. Taylor talking about the Commissioners" * * * The witness, continuing his answer, further states: "*Mr. Cameron,* when he heard he mentioned the Commissioners' names, he stopped to hear what he was talking about, and he said that he said, 'These other Commissioners in before this,' he said 'he couldn't get a d—— cent out of them,' and he said 'These s—— of b——s are a great sight worse.' That's why we wrote the letter, to know why we were called s—— of b——s and to know if he had any claim against the town of Perryville. If there was, we wanted it"

The letter was not sufficient to remove the bar of the statute. It is not only the right but the duty of municipal officers to require claims to be presented for their consideration. The bill that was produced before the Commissioners ran from 1901 to July 14th, 1906, and then had added to it the three small items referred to, in April, 1910. Nothing had been paid on it since July, 1906. The only credits on it amounted to $250.00, which was not quite enough to pay the bill rendered June 4th, 1901. The account amounted to

over $1,500.00, consisting for the most part of what seem to be day wages and teams hired from time to time. If the plaintiff had informed the Commissioners in office in 1913 of the character of the bill claimed to be due him, they would naturally be suspicious of it and would not be ready to acknowledge it as correct. They would be derelict in their duties if they paid such a claim without thoroughly investigating it, but at the same time were justified in calling upon the plaintiff to file it, especially if he was using such language in reference to them as we have quoted above. It would be difficult to find any acknowledgment, recognition or admission in this letter. Mr. Gorrell and Mr. Campbell both testified that they could find no record of the account, and they wanted and had the right to demand an itemized bill. The account was long since barred, except the three items for work in April, 1910, amounting to $8.75. As the other items were from six to ten or eleven years old, they were perfectly right in naming a time, by which the itemized bill was to be left with the Secretary, if they then had any idea of the amount the plaintiff claimed, and if they did not know what he claimed they had the right to know it, and have the account in such shape as they could investigate it. The letter does not admit that they owed him anything, and does not promise, expressly or by implication, that they would pay him anything, although they do say that any bill or claim for work done or material furnished previous to February 3, 1910, will not be recognized after February 3, 1913, and they do not intimate that they would recognize any part of his bill as due. Shortly after he filed this claim they notified him they would not pay it, but he still waited for nearly two years before bringing suit.

It is not unusual for municipalities to publish notices requiring claims to be filed within a certain time named—the charters of many of them require such claims to be filed properly proven. Mr. Campbell testified that they found that they did not owe the account and refused to pay it, and

Mr. Gorrell's evidence is to the same effect. They ought to have returned his account, but they probably thought it safer to keep it, so as to have something to show what he was claiming in case of suit. It would be giving our decisions on the subject, some of which have already gone quite far, a dangerous construction to hold that officers of municipalities, who know nothing whatever about claims, acknowledge them by writing such a letter as this. They could not properly admit them to be due, as they were not in office at the time they were alleged to be contracted and did not know whether they were due or not. It would open the door for the grossest fraud, to permit a stale claim of this sort to be revived by such a letter. It might be impossible for the Commissioners then in office to procure testimony to meet that of the plaintiff as to whether the account was due, or had been paid, if it ever was due. If the publication in the newspaper offered by the plaintiff was given effect, it showed that the secretary and treasurer thought there was due $1,000 in June, 1908, but in February, 1913, the plaintiff claimed over $1,500, besides interest, although according to his account only $8.75 had become due after 1906. That statement shows that they were unable to get a bill. It is so improbable that anyone would permit a claim of that kind to run from year to year without being paid, and then for two years after the last item not even present a bill, that it behooved the officials to very carefully scrutinize one which was finally presented years after the claim was barred by the statute of limitations. The account does not show where the men named in it worked, what the teams were employed for, nor does it show why the plaintiff was employing persons or teams for the town of Perryville.

In 25 *Cyc.* 1361, the rule is thus announced as to municipalities: "The statute may be suspended as to debts of a municipality by acknowledgment, which may be made by ordinance duly passed by the legislative body or by procuring legislation providing for the payment of such debts and the levy of taxes therefor. But it is not suspended by a promise

or acknowledgment made by an officer, not expressly authorized to bind the city; by levying and collecting taxes to pay interest on debts generally; by reference of a claim to experts; or to a committee; by including it in a statement of indebtedness prepared in obedience to a statute; by an acknowledgment of it in the annual report of an officer; by the adoption of such report; by a reference to it in a report of a committee, or by the adoption of such report." See also 17 R. C. L. 920, sec. 282.

This entire account was barred, except the three items in 1910, when the letter was written, if it ever was due, and Commissioners or Councilmen of a municipality should not be permitted, much less be held to have intended to have acknowledged an account by such a letter as this, written under the circumstances it was. It might result in the commissioners who were in office during the years the account covered refusing for proper reasons to pay it, and then by calling upon those who knew nothing about it to pay it have them agree to look into it and if they happen to use some expression from which it could be contended that there was an acknowledgment, make the municipality liable.

"There must be shown to exist one of three things to take a case out of the operation of the statute of limitations: First, an admission or acknowledgment by the debtor of a *subsisting* debt from which a promise to pay *may be implied;* secondly, an unconditional promise to pay the debt; or thirdly, a conditional promise to pay the debt, and evidence which shows that the condition has been performed or gratified." *Wilmer, Trustee,* v. *Gaither,* 68 Md. 342, 345. While under some of our decisions it has not required very much to establish an admission or acknowledgment by *the debtor,* who is presumed to know whether he owes the debt, when it is sought to hold a municipality for statements made by officers, who know nothing whatever about the account, it would be a great injustice to taxpayers if the officers were permitted to make them responsible for something that they knew nothing about. We are satisfied that the letter is not an acknowledg-

ment or recognition of any debt due by the Commissioners of Perryville to the plaintiff, and that even if the terms used might be held sufficient if used by an individual debtor in reference to a debt claimed to be due by him, it is not sufficient to bind the Commissioners of Perryville.

Although we have said the prayer was too general, as the only question in the case was in reference to the statute of limitations, no harm was done the appellant by its form.    A prayer that there was no legally sufficient evidence to take the case out of the operation of the statute of limitations, and the verdict must be for the defendant, would have been sufficient, and, as that is manifestly what the lower Court meant by granting the one it did, and we are satisfied that the plaintiff is not prejudiced by the error as to the form of the prayer, we will follow the course adopted in *White* v. *Bramble,* 124 Md. 395, and affirm the judgment.

*Judgment affirmed, the appellant to pay the costs.*