## SPENCER HEATH vs. EMORY MICHAEL.

*Signature—By Corporate Officer—Personal Liability—Evidence.*

That the name of the president of a corporation, signed to an order for merchandise, was not followed by his official capacity, did not indicate an intention to bind him personally, the order being upon a printed blank of the corporation, which showed that he was the president, and his signature being where it would naturally be written as that of an officer, under a provision that the order should be valid only when signed by an officer.　　　pp. 282, 283

Whether one signing an agreement meant to bind himself personally or as an officer of a corporation, may be shown by parol evidence.　　　pp. 282, 283

In an action for the price of lumber, it appearing that plain-tiff had known defendant as president of a corporation and dealt with him for years as such, and that before signing the order for the lumber defendant had received a report in regard to the lumber from another officer of the corporation, plaintiff not stating that he had dealt with defendant otherwise than as an officer of the corporation, and defendant testifying that it was only as such officer that he had dealt with plaintiff, and that he signed the order as such, *held* that defendant, in sign-ing the order, was acting for the company and not for himself individually.                                         p. 283

Where the evidence of both plaintiff and defendant, without contradiction, shows that the paper in suit was signed by de-fendant, not individually, but as an officer of a corporation, it is proper to withdraw the case from the jury, upon the submis-sion of a prayer to that effect.                    pp. 283, 284

A prayer asking that the jury be instructed that there is no evidence under the pleadings entitling plaintiff to recover was properly refused, as too general in its statement of variance.

p. 284

The objection that a prayer submitted to the finding of the jury facts which were not offered in evidence must be raised by special exception.                                   p. 284

In an action against two defendants for the price of lumber sold, a prayer in effect that if both or either of them bought the lumber, and a part of the order was received by either, not confining it to the purchaser, and either of them declined to receive it, again not confining it to the purchaser, the one who should have received it, and the plaintiff was unable to sell the lumber except at a loss, then the verdict must be "against such defendant as the jury may so find," was improperly granted.

pp. 284, 285

*Decided April 9th, 1924.*

Appeal from the Superior Court of Baltimore City (DAW-KINS, J.).

Action by Emory Michael, trading as the Harford Lum-ber and Pulp Company, against Spencer Heath and the Pre-mier Ply-Wood Company. From a judgment for plaintiff, defendant Heath appeals. *Reversed.*

The cause was argued before BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*William J. Ogden,* for the appellant.

*John L. G. Lee,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an action of assumpsit brought by the appellee, Emory Michael, trading as the Harford Lumber Company, against the appellant, Spencer Heath, and the Premier Ply-Wood Company, a corporation.

The declaration contains six common counts and one special count. The special count alleges that the plaintiff sold to the defendants certain lumber therein named and described, which they refused to take, and the plaintiff, as he alleges, suffered loss and damage in the resale of it to others.

The plaintiff in the trial of the case first offered in evidence two orders under which the lumber mentioned in the declaration is said to have been sold, one dated March 26th, 1920, and the other May 13th, 1920. These orders were upon the printed blanks of the Premier Ply-Wood Company and were alike in their wording, except as to the character and amount of lumber contained in them.

It will only be necessary for us to insert one of the orders in this opinion, which is as follows:

"Spencer Heath,                Purchase Order No. 5971.
          "President.
                "Premier Ply-Wood Co.,
               "Covington and Gittings Sts.,
                    "Baltimore, Md.
     "A. G. Fleagle,
          "Secretary.
     "W. D. Moore,                Date: 3/26/20.
          "Treasurer.
               "Harford Wood Company,
                    "c/o Mr. E. Michael
"Gentlemen:
     "Kindly enter our order for material listed below

"Quantity.    Material.     Price.

 "1 small car 4/4 Log Run Chestnut, Price
  f. o. b. Balto...................... 45M

 "1 car 4/4 Log Run Oak, Price f. o. b.
  Balto. ........................... 45M

 "1 small car (about 6M to 7M ft.), mostly
  2x4 Chestnut, Price f. o. b. Cars....... 35M

  "50M to 100M ft. 5/4 Log Run Poplar,
  Price f. o. b. Cars.................. 45M

"This order not valid unless signed by an Officer of
 the ·Company.

"Ship Via"       Spencer Heath."

Following the introduction in evidence of the orders mentioned, the plaintiff testified that "he had shipped and delivered to the plant of the Premier Ply-Wood Company in Baltimore, two carloads of lumber, and that on the unloading of the same, the defendant, Spencer Heath, had rejected the said lumber, because of stains and mold in the lumber, caused by heating the lumber which was green when loaded in box cars at point of shipment." The plaintiff stated that the lumber was in good condition when loaded on the cars.

The plaintiff was asked, "Who was the president of the Premier Ply-Wood Company?" and his reply was, "Spencer Heath." "Do you know Mr. Heath?" "I do, personally," and when asked how he knew that Mr. Heath was the president of the Premier Ply-Wood Company, he said, "I was only told so, I do not know it." "Where did you meet Mr. Heath?" "I met him in his office on Key Highway about three years ago." The court then asked, "Did he look like a president?" "Well, he treated me in the way that I thought he might be president." His counsel said, "That settles it," and the court suggested, "I guess that is all he knows about it," and his counsel replied, "Yes."

In addition to the above evidence, the plaintiff produced a witness who testified that the lumber referred to by him was in good condition when shipped; and another witness, the purchaser of the lumber when resold, said it was in good

condition when he bought it, and that it was not green at
that time.

It may also be said that it appears in the record, inserted
therein at the request of the counsel for the appellee, that the
plaintiff had not only known Mr. Heath for some years, but
"had dealt with him, buying and selling him lumber," and
that the plaintiff, before the order was given, "took Spencer
Heath out to look at some poplar timber similar to that sold
and that after said inspection Mr. Heath made the contract,"
by giving the orders referred to. That "Messrs. A. G. Flea-
gle (the secretary of the company) and a lumber inspector
named Wilie, who are representatives of the defendant, vis-
ited the place when the timber was standing and made a
favorable report to Mr. Heath. This all preceded the sign-
ing of the said purchase orders."

The evidence stated above is the entire evidence offered
by the plaintiff in support of his claim.

The defendant Heath testified that in 1920, at the time
of the transaction referred to, he was the president of the
Premier Ply-Wood Co. His attention was called to the pro-
vision in the order stating that "this order not valid unless
signed by an officer of the company," and he was asked why
he signed the order. He answered saying, "I signed that,
because I was an officer of the company, and signed as such
on the company's regular form of order." He was then asked
by the court, what he meant by saying that he "signed as
such," and he replied, "I signed it in my capacity as an
officer of the company," and when further asked, "Did you
ever in your individual capacity, apart from your being an
officer of the Premier Ply-Wood Company, buy any lumber
or have any dealings with Mr. Michael?" said, "No, sir; I
never had any dealings with Mr. Michael except as president
of the Premier Ply-Wood Company." At the conclusion of
this evidence, no other being offered, the court granted the
plaintiff's four prayers, and rejected the only prayer offered
by the defendant, which asked "that the jury be instructed
that under the pleadings in this case, the plaintiff has offered

no legally sufficient evidence to entitle him to recover from this defendant Spencer Heath, and the verdict of the jury must be for the defendant."

The jury rendered a verdict "in favor of the plaintiff for $1,324.99" and upon the verdict a judgment was entered in favor of the plaintiff, and from that judgment an appeal was taken to this Court by Heath, but not by the defendant corporation, the Premier Ply-Wood Company.

Heath, the appellant, contends that he is not individually liable to the plaintiff for the alleged damage and loss for which suit is here brought, as the lumber mentioned was not purchased by him, acting individually, but by the Premier Ply-Wood Company, through him as its president.

The orders under which the timber was bought were upon the printed blanks of the Premier Ply-Wood Company. Upon them appears the name of the company and its place of business, also the names of its president, secretary and treasurer, and at the end of the order, and immediately above the place at which the signature of the one signing the order should appear, is the provision mentioned above, stating that "This order not valid unless signed by an officer of the company," and immediately thereunder is found the name of "Spencer Heath." His official capacity in respect to the company does not follow his name, and it is upon that omission alone that the plaintiff seeks to hold Heath individually liable, notwithstanding the fact that it appears upon the order that he is the president of the company, and that his signature is upon the order where, under its requirement, it would naturally be written as "an officer of the company."

It was said by JUDGE PEARCE, speaking for this Court, in *Morrison* v. *Baechtold*, 93 Md. 328: "Whether an officer of a corporation signing an agreement, means to bind himself personally, must as a general rule be determined by the face of the paper itself; but where there is such ambiguity on the face of the paper as to be consistent with either construction, whether one means to bind himself personally, or acts only in an official capacity, parol evidence is clearly ad-

missible to prove the circumstances under which the contract was made; or in other words, to prove the true nature of the transaction.' *Laflin and Rand Powder Co.* v. *Sinsheimer,* 48 Md. 416; *Haile* v. *Pierce,* 32 Md. 332; *Barry* v. *Pike,* 21 La. An. 221."

The fact that Heath did not mean to bind himself personally is, we think, shown to exist upon the face of the order itself, but if this be not so, such fact is shown by the uncontradicted evidence in the case. The plaintiff knew Heath as the president of the Premier Ply-Wood Company, and had dealt with him for years in that capacity, and it is not stated by him that he dealt with Heath in any other capacity; and Heath is positive in his statement that he never had any dealings with Michael, the plaintiff, except as president of the Premier Ply-Wood Company, and that he signed the orders mentioned in this case, as president of that company. It is further shown by the evidence of the plaintiff that A. G. Fleagle, secretary of the Premier Ply-Wood Company, inspected the timber from which the lumber was cut and reported his findings to Heath, before the order was signed by the latter. This, we think, clearly indicates that Michael knew with whom he was dealing and that Heath, in signing the orders, was acting for the company of which he was president, and not for himself individually. It is not attempted to be shown by the plaintiff that Heath was acting otherwise than for the company, while the evidence of Heath conclusively shows that he was acting for and on behalf of the company.

In cases where there is ambiguity on the face of the paper and it cannot be determined from it whether the signer meant to bind himself or the company he represented, and parol evidence is offered to show the true state of facts in regard thereto, and there is a conflict in the evidence, it then becomes a question for the determination of the jury, but such is not the case before us. Here, both the evidence of the plaintiff and defendant, without contradiction, support the contention of the defendant, and shows that the paper was

signed, not by him individually, but for the company. There-
fore, in our opinion, the case was one that should not have
been submitted to the jury. But we do not find that the
defendant asked that the case be withdrawn from the jury
for want of evidence legally sufficient to entitle the plaintiff
to recover.

The only prayer offered by the defendant is the one we
have referred to, which asks that the jury be instructed that
there was no evidence *under the pleadings* entitling the plain-
tiff to recover. This prayer was properly refused, because
too general in its statement of variance.

The court, as we have said, granted the plaintiff's four
prayers. At least three of these are defective, inasmuch as
they submit to the finding of the jury facts which were not
offered in evidence, so far as the record before us discloses,
but this objection was not raised by special exceptions, as
should have been done had the defendant wished to avail
himself of such defect.

It will, however, be found upon examination that at least
one of these prayers is objectionable for other causes. By
the first prayer of the plaintiff the jury were instructed in
these words, "If they believe from the evidence that the de-
fendants, Spencer Heath, or the Premier Ply-Wood Corpo-
ration, bought of the plaintiff the poplar and chestnut lum-
ber mentioned in the orders of May 13, 1920, and if they
further believe from the evidence that part of the order of
May 13, 1920, was received by the defendants, or either of
them, and the defendants, or either of them, decline to re-
ceive the balance of said lumber, and if they further find
from the evidence that the price of lumber about that
time dropped, and that the plaintiff was unable to sell said
50,000 feet of poplar and chestnut lumber, except at a loss,
then their verdict must be for the plaintiff against such de-
fendant as the jury may so find to such sum, if any, as the
jury may find was so lost."

The effect of this prayer was, if the jury found both, or
either, of the defendants bought the lumber, and a part of the

order was received by either of them, not confining it to the purchaser, and either of them declined to receive it, again not confining it to the purchaser, and the one who should have received it, and the plaintiff was unable to sell the lumber except at a loss, then the verdict of the jury must be for the plaintiff "against such defendant as the jury may so find."

It is difficult to ascertain just what was meant by this prayer, but the least that may be said of it is that it must have been confusing to, if not incapable of being understood by, the jury, in its attempt to state the law as to the liability of the defendant. The court, we think, erred in the granting of it, and without discussing the other prayers, we will reverse the judgment as to the appellant, without awarding a new trial, for, as we have already said, the case should have been withdrawn from the jury because of the want of evidence legally sufficient to entitle the plaintiff to recover against the defendant, if a proper prayer for that purpose had been offered.

> *Judgment as to the appellant reversed, without a new trial, the appellee to pay the costs.*