## FIDELITY AND DEPOSIT COMPANY *v.* BENEFICIAL LOAN ASSOCIATION.

*Employee's Fidelity Bond—Evidence as to Breach—Variance Prayer—Demurrer to Evidence.*

In an action on a bond of indemnity against fraud and dishonesty on the part of an employee of plaintiff loan association, *held* that the evidence did not show that such employee received or appropriated any part of the money or chattel mortgages involved in a certain automobile transaction.        pp. 189-192

A prayer that "under the pleadings and evidence" there "has been introduced no evidence legally sufficient to entitle the plaintiff to recover, and therefore the verdict must be for the defendant" while insufficient as a variance prayer, may be treated as a demurrer to the evidence, when so intended.        p. 193

*Decided June 8th, 1927.*

Appeal from the Baltimore City Court (DUFFY, J.).

Action by the Beneficial Loan Association of Newark, New Jersey, against the Fidelity and Deposit Company of Maryland. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*J. Stuart Galloway,* with whom was *Washington Bowie* on the brief, for the appellant.

*Edward L. Ward,* submitting on brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

The Beneficial Loan Association of Newark, N. J., the appellee, with an office in Baltimore, secured from The Fidelity and Deposit Company of Maryland, the appellant, on October 1st, 1919, an indemnity bond, whereby the appellant agreed "to indemnify * * * the employer (the appellee) against the loss of any money or other personal property (including money or other personal property for which the employer is responsible) through the fraud, dishonesty, forgery, theft, embezzlement or wrongful abstraction of any employee named in the schedule forming part of" the "bond, directly or in connivance with others, while such employee holds any position at any place in the service of the employer while" the "bond is in force." The term of the bond began on October 1st, 1919, and expired October 1st, 1920. A bond of like tenor and effect was executed December 21st, 1920, for the year beginning December 6th, 1920, and expiring December 5th, 1921. One of the employees scheduled with the bonds was R. T. Walter, manager of the employer's Baltimore office, in the sum of $2,000, and it is for his alleged shortages suit was brought on both bonds. If there is liability in this case under the evidence, it is on the first bond, as the alleged misappropriation, according to the appellee's theory and evidence, occurred in April, 1920. The case

was tried in the Baltimore City Court before Judge Duffy, sitting as a jury, who rendered a verdict in favor of the appellee for $657.20, and from the judgment thereon this appeal was prayed.

With the declaration the appellee filed a bill of particulars on which it claimed indemnity, showing balances on thirteen loans and one unnumbered item designated "shortage in bank, $60," amounting in all to $2,639.29, and credited thereon as items admitted and paid, $526.75, leaving the balance sued for, $2,112.24. The evidence appears to be confined to the transactions of the appellee with one Taylor O. Wardin as follows: Loan No. 4236, January 30, 1920, balance due, $205.00; loan No. 4615, May 3, 1920, balance due, $273.00; loan No. 4704, June 29, 1920, balance due, $260.50, and loan No. 4611, April 3, 1920, balance due, $257.00, and of these recovery was only claimed at the trial on loans 4615 and 4611, which, with interest, $127.20, amount to $657.20, for which judgment was entered. The items included in the verdict and judgment show from the evidence that this case is concerned only with the checkered career of a broken down automobile.

The appellee was engaged in the petty loan business under article 58A of the Code, whereby it was limited to loans not in excess of $300 at any one time to any person at rates exceeding six per cent. per annum, loans made within the law allowing interest up to three and one-half per cent. per month. In the present case it appears that the two loans on which judgment was recovered were originally for $300 each, though according to the evidence they constituted one loan of $600, secured by chattel mortgages on an automobile. The appellant contends that this was an illegal transaction, for the reason just stated, and therefore not recoverable in suit against the surety. Because of our opinion of the whole evidence we do not find it necessary to express an opinion on this point.

The evidence shows that the appellee, in December, 1919, had a Chalmers touring car on its hands, which it sold to

one Alfred C. Blades for $600, taking two chattel mortgages on the car for $300 each in payment. Blades had the car about one day. The car stopped on the street in Baltimore, where Blades abandoned it, 'phoned to the appellee's office to take it, and after leaving it there two or three days, Walter, appellee's manager, had it towed to a garage. Blades testified that he paid no money on the car and received nothing out of the mortgages.

Taylor O. Wardin testified that he had had a loan from the appellee prior to his automobile transaction. He was in ill health, had been advised to go to the Sabillasville Sanitarium, and was without means. He said he had gone to Robert T. Walter about March, 1920, and arranged to buy the Chalmers car, and about April 3rd closed the transaction by taking the car and gave two chattel mortgages of $300 each in payment; that he intended to use it at the sanitarium for hacking or taxi purposes, and it was understood with Walter that he would pay for the car out of the proceeds of the business. The car broke down in two days and he "kept repairing it but it would not run," and early in June the appellee had it towed, the appellee's cashier paying the expense, to a garage at Catonsville, where Walter sold it for about $60, which was turned over to Wardin to reimburse him for the repairs and parts paid for by him. Wardin testified, and he was appellee's witness, that he paid no cash on the purchase money and gave nothing in payment except the two chattel mortgages, and that it was understood, when he turned in the car, that the loans would be cancelled.

Wardin had in all loans from the appellee to the amount of $1,130, on which the credits on the principal amounted to $154.50. He testified, according to the record, "that he thought he paid all the money back, that he could account for $325 to $350 from the records, and he was quite certain that he had additional receipts amounting to probably $100 or $150, but that they did not appear on the record." When we consider that these loans bore interest at three and one-

half per cent. per month, it is not difficult to believe that his payments were being swallowed by the interest.

It appears also from Wardin's testimony that Walter spent $175 for repairs and parts during the last two months of its stay with Wardin, for which he gave the appellee his note in addition to the chattel loans. Wardin said he paid the note in two dollar installments, and when he got through with that he stopped paying at all. Whether this amount is inclusive or exclusive of the total amount claimed to have been paid by him does not appear.

Gertrude A. Rudolph, the appellee's cashier, in answer to the question, "Was any money paid out in pursuance to those loans?" said "That I cannot say." She testified that the two $300 chattel mortgage loans were charged on the books the same as any cash transaction, and that they did not show an automobile as the consideration. Walter testified that the loans were given in payment of the car; that he received nothing from Wardin and gave him nothing except the car, money to buy his license, and the money finally received from the sale of the car to reimburse him for his (Wardin's) expenses.

There is no evidence in the record that Walter, directly or indirectly, got, received, or appropriated any part of the money or chattel mortgages involved in this automobile transaction.

There were six exceptions taken by the appellant, five to rulings on the evidence and the sixth to the refusal of the appellant's first, second, fourth, and fifth prayers.

There was no evidence to support the appellant's second, fourth and fifth prayers, and they were properly refused. In view of our conclusion on the whole evidence the appellant cannot complain of the rulings of the trial court on the evidence.

The first prayer of the appellant prayed the court "to instruct itself, sitting as a jury, that "under the pleadings and evidence in this case there has been introduced no evidence legally sufficient to entitle the plaintiff to recover and

therefore the verdict must be for the defendant." As a
variance prayer it was properly rejected as not in con-
formity with provisions of section 11 of article 5 of the
Code, which requires that "such prayer or instruction shall
state specifically the points wherein it is claimed that such
variance exists." *Kent County v. Pardee,* 151 Md. 68;
*Askin v. Moulton,* 149 Md. 145; *Mattare v. Cunningham,*
148 Md. 309; *Heath v. Michael,* 145 Md. 277; *Taylor v.
Commissioners of Perryville,* 132 Md. 414. This Court
has, however, indicated that such a prayer may be con-
sidered as a demurrer to the evidence in *Askin v. Moulton,
supra,* where Judge Walsh said, "as the defendant's fourth
prayer (a demurrer to the evidence) obviates any need of
treating the fifth prayer as a demurrer to the evidence, we
find no error in the rejection of the defendant's fifth prayer."
In *Taylor v. Commissioners of Perryville,* 132 Md. 412,
of such a prayer Chief Judge Boyd said: "That sort of a
prayer has been held to be bad a number of times by this
court, although we will only refer to 2 *Poe,* sec. 297. As
the real question in the case is, whether there was legally
sufficient evidence to take the plaintiff's claim out of the
statute of limitations, we will pass on that."

It is obvious that this was intended to be and should
be treated as a demurrer to the evidence, as in our opinion
there was no legally sufficient evidence to entitle the plaintiff
to recover, and the case should have been withdrawn from
the court sitting as a jury, as if a prayer proper in form to
that end had been offered at the trial. *Healh v. Michael,
supra,* p. 285.

> *Judgment reversed without a new trial, ap-
> pellee to pay costs.*